PHEBE WARREN MCKEAN DOWNS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 86798.  Promulgated December 9, 1937.

*Virgil Y. Moore, Esq.,* for the petitioner.
*F. R. Shearer, Esq.,* and *D. A. Taylor, Esq.,* for the respondent.

1132

OPINION.

HARRON: Respondent has conceded that petitioner properly deducted $5,000 from gross income which represented interest paid by petitioner on her indebtedness to a trust created by the will of her father. There is no issue remaining as to this item. The two remaining issues relate to whether petitioner is taxable on the net income of two trusts of which she was the grantor.

Respondent contends that the income of the first trust created in 1923 is taxable to the petitioner under the provisions of section 167 of the Revenue Act of 1934, quoted below.[1] The first trust was created in 1923 by the petitioner with her children and grandchildren as the beneficiaries. None of the income of the trust was, under the terms of the trust, currently distributable to the grantor or could, in her discretion, be accumulated for future distribution to her. There was no provision in the trust instrument for revesting in the grantor title to the corpus of the trust. In fact, the trust was expressly "declared by Grantor, after due consideration, to be irrevocable." All of the children of the grantor, who were the immediate income beneficiaries, had already attained their majority at the time of creation of the trust so that the respondent concedes that the income would not be taxable as that of the grantor under the principle of *Douglas* v. *Willcuts*, 296 U. S. 1; *Helvering* v. *Stokes*, 296 U. S. 551; and *Helvering* v. *Schweitzer*, 296 U. S. 551, because it did not go to discharge any legal obligation of the petitioner's to support her minor children. The respondent's case rests on the power

---

[1] SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

(a) Where any part of the income of a trust—

(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or

(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; or

(3) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23 (o) relating to the so-called "charitable contribution" deduction) ; then such part of the income of the trust shall be included in computing the net income of the grantor.

(b) As used in this section, the term "in the discretion of the grantor" means "in the discretion of the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of the part of the income in question."

reserved by the petitioner to alter the distributive shares of the distributees and his theory is, that under this reserved power the grantor might reduce the distributive shares of every beneficiary of income or principal to a nominal sum of, for example, $1 each. Then, since there was no disposition in the trust instrument of the balance of the income and principal, there would arise by operation of law a resulting trust in the grantor, and presumably she could draw down such principal and any accumulated income upon a possible termination of the trust. We do not need to consider the question of whether she could obtain a termination of the trust during her lifetime, under the law of resulting trusts, which appears doubtful and which apparently would be a necessary condition to the application of either section 167 or section 166 of the Revenue Act of 1934. We believe respondent's position must be disapproved on his construction of the power reserved by the grantor in the trust instrument itself.

We are of the opinion that the grantor did not retain the power to reduce the share of income and principal of every distributee to a nominal sum and thus effect a resulting trust for herself, but that *all* of the income and principal was required to be distributed to beneficiaries of the classes specified in the trust instrument and that the only power retained was to alter the distribution *as among* those beneficiaries. This conclusion is based on our construction of the whole instrument, together with the apparent intention of the grantor as manifested therein, and the conduct of the parties during its operation. At the very outset the instrument provides for current distribution of the "*entire* net income" to the named beneficiaries. It then provides minutely the terms of distribution of income and principal to children and grandchildren and descendants of deceased children and grandchildren, with no reservation whatever of any income or remainder interest in the corpus to the grantor. But the respondent's case is based upon his construction of the last paragraph of the instrument. It reads: "All the trusts herein named and established are declared by Grantor, after due consideration, to be irrevocable, save and except that Grantor reserves the right by deed duly executed by her and lodged with Trustees to alter, vary and change the distributive shares of any and all distributees of either principal or income under this deed." The general grant is contained in the first part of the sentence and clearly declares the instrument to be irrevocable; the "save and except" clause, like any *exception* to a grant, must necessarily be something of a smaller quantum than the grant itself else the grant would be a nullity. That construction is favored which makes the grant effective, and the trust instrument is always construed against the grantor and in favor of the beneficiaries. The excepting clause here, since it *is* an excepting clause, must be limited despite

its broad terms to the power to alter the distribution as between beneficiaries of the named classes, for otherwise, as the respondent rightly contends, it would comprise the power to revoke, which is absolutely inconsistent with the preceding clause containing the irrevocable grant. When the trust instrument was declared to be irrevocable we think that meant irrevocable by any means whatever, whether by a direct revocation or by the exercise of a power reserved under the instrument coupled with the operation of a rule of law such as the rule regarding resulting trusts. We do not think the grantor's reserved power extended any farther than to alter the distribution as between the classes of beneficiaries specified. It does not appear to have been the grantor's intention to retain any interest whatever in the income or corpus of the trust for herself, and in the construction of a trust instrument the intention of the grantor is of utmost importance. The instrument carefully provides for the distribution of principal and income to her descendants upon all possible contingencies and the grantor is not named as a beneficiary under any conditions. Furthermore, the conduct of the parties to the trust which can be looked to for assistance in the construction of a trust instrument also bears out our conclusion. Although she made seven alterations in the distributive shares of beneficiaries at various dates from 1923 to 1935, she never attempted in any of these changes to prevent the distribution of the entire net income and principal of the trust to the beneficiaries or to cause any of it to be returned to herself. In fact all of the net income was each year distributed to all of the named beneficiaries.

Construing her reserved power as limited to alterations of the distribution as among beneficiaries of the classes named in the trust instrument, the petitioner is not taxable upon the income of this trust under either section 167 or 166 because there was no possibility whatever of her obtaining possession or beneficial use of either the principal or income of the trust. The $13,426.84 income of this trust, for the year 1934, is not taxable to the petitioner.

The second trust with which we are concerned was created by the petitioner on May 22, 1931. Under its terms $4,000 was to be paid annually to grantor's then daughter-in-law, Anne Merrick Downs, out of the income of the trust if sufficient, and if not, the deficiency in any year was to be paid out of principal. Any excess of income over $4,000 was distributable to the grantor. In the tax year involved there was such an excess which was distributed to the petitioner and she paid income tax thereon. The daughter-in-law was contemplating a divorce at the time of creation of the trust, and the trust instrument provided that the trust should terminate at the time of her death or remarriage and the corpus of the trust should

be paid over to the grantor or to her *inter vivos* assignees or appointees by will. The grantor had no management or other powers over the corpus for the duration of the trust. The trust was expressly made irrevocable.

The respondent is attempting to tax as income to the petitioner the $4,000 earned by the trust and paid to Anne Merrick Downs during the taxable year, in other words, respondent's contention is that all of the income of such a trust is taxable to the donor under section 166. The theory on which he bases this tax is not altogether clear. The deficiency letter lumps together both this trust and the one discussed above and says that the income of both is taxable to the grantor because "*the* agreement creating the trusts" reserves the right in the grantor to "alter, vary and change the distributive shares of any and all distributees of principal or income." However, the trusts are in actuality two separate trusts and the instrument creating the Anne Merrick Downs trust contains no such reservation as that quoted in the deficiency letter and no power of alteration whatever was reserved.

At the hearing the respondent's counsel by his line of questioning indicated that he was attempting to show that the trust was established for the purpose of legally benefiting the grantor by warding off, for example, a suit for alienation of affections by Anne Merrick Downs against the grantor. However, none of the testimony supported such premise. There are no facts present to show that the income remained "in substance that of the grantor" within the rationale of *Douglas* v. *Willcuts*, 296 U. S. 1; see Regulations 94, art. 166–1. There was no legal obligation of any kind owing by the grantor to Anne Merrick Downs, nor does it appear that there was any motive of tax avoidance in establishment of the trust by the petitioner rather than by her son because it affirmatively appears that the son was without the property necessary to furnish the required trust corpus. There was not and is not any agreement for repayment by the son to the petitioner on account of her establishment of the trust. She received no legal benefit and discharged no legal obligation by her act and is, therefore, not taxable under the principle of *Douglas* v. *Willcuts, supra.*

On brief the respondent elected to submit his case on this issue "without argument." It is our opinion that respondent's action, respecting the income of the second trust is in error because clearly the trust, by its terms, does not have such characteristics as would result in the application of section 167, Revenue Act of 1934, and we are of the opinion that it is not such trust as comes within the pro-

visions of section 166 quoted in the margin.[2] That section deals with "revocable trusts", which are a well understood type of trust where a power to revoke either in whole or in part is retained by the grantor. Here the trust was expressly declared to be "irrevocable" in its entirety, the grantor being without power "at any time to revoke, change or annul any of the provisions herein contained." Respondent has not argued that the possibility of a reversion to the grantor upon the death or remarriage of Anne Merrick Downs brings the trust within section 166. A possibility of a reverter is, in our opinion, different from "the power to revest" which is comprehended by section 166. We have here a trust for an indefinite term, "pour autre vie" or until the occurrence of a contingency over which the grantor has no control. No exercise of volition by the grantor is required nor would have any effect upon the return of the corpus to her. When and if it returns to the grantor or her assignees or appointees it will return by operation of the terms of the trust instrument itself and not by the exercise of any "power" retained by the grantor. We believe such a trust is not covered by the terms or intendment of section 166. See *United States* v. *First National Bank of Birmingham*, 74 Fed. (2d) 360, where a trust for a term of one year at the end of which the trust property would revert to the grantor was held to be without the scope of section 166 of the Revenue Act of 1928,[3] which contains language of apparently the same import in the particulars material to this question as section 166 of the Revenue Act of 1934.[4] See also, Magill, Taxable Income, pp. 281, 282. But compare *Warren H. Corning*, 36 B. T. A. 301, where the facts are distinguishable. There a grantor was held taxable under section 166 of the Revenue Act of 1934 on income of a trust with a power of the ordinary type to amend or revoke although exercisable only upon certain conditions.

We are satisfied that under its terms the trust is outside the scope of both sections 166 and 167.

---

[2] SEC. 166. REVOCABLE TRUSTS.

Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust shall be included in computing the net income of the grantor.

[3] SEC. 166. REVOCABLE TRUSTS.

Where the grantor of a trust *has,* * * * *the power to revest* in himself title to any part of the corpus of the trust * * *. [Italics supplied.]

[4] SEC. 166. REVOCABLE TRUSTS.

Where * * * *the power to revest* in the grantor title to any part of the corpus of the trust *is vested—*

(1) In the grantor, * * *. [Italics supplied.]

Petitioner has made claim for a refund and it appears that the Commissioner has made an adjustment in the item of foreign dividends in his determination, not at issue. Therefore, although all the issues are decided for the petitioner, a recomputation may be necessary under Rule 50.

*Decision will be entered under Rule 50.*